UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF FLORIDA MIAMI DIVISION

Case No. 1:22cv23918

ANTON PARDINI,
as Personal Representative
of the Estate of Judith Pardini,

     Plaintiff,

vs.

OCEANIA CRUISES S. de R.L.,
d/b/a OCEANIA CRUISES,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ANTON PARDINI, as Personal Representative of the Estate of Judith Pardini,

sues OCEANIA CRUISES S. de R.L., d/b/a OCEANIA CRUISES, a Florida for-profit Limited

Liability Company, ("OCEANIA") and alleges:

### Jurisdictional Allegations

1.     This is an action for damages that exceed Seventy-Five Thousand ($75,000)

Dollars, and this Court has diversity jurisdiction under *28 USC §1332*.

2.     Plaintiff, ANTON PARDINI, is the son of Judith Pardini and the duly appointed

Personal Representative of her estate.

3.     Anton Pardini was and is a resident and citizen of the State of Oregon.

4.     Judith Pardini was a resident and citizen of the State of Oregon.

5.     This wrongful death action includes claims brought on behalf of the Estate of

Judith Pardini, and individual claims on behalf of her widow and survivor, Ulisse Pardini.

6.      Ulisse Pardini was and is a resident and citizen of the State of Oregon.

7.      Defendant, OCEANIA, is a Florida limited liability company with its worldwide headquarters, principal address, and principal place of business in Miami, Florida.

8.      Venue is proper in this Court because OCEANIA's principal place of business is in Miami-Dade County, a substantial part of the events or omissions giving rise to the causes of action happened in Miami-Dade County, and OCEANIA's Ticket Contract requires that suit be brought in this Court.

### Factual Allegations

9.      OCEANIA, as a common carrier, provides vacation cruises to the public aboard vessels including the OCEANIA *Riviera*. OCEANIA owned, operated, managed, maintained, and/or controlled the OCEANIA *Riviera*, including the onboard medical center.

10.      OCEANIA, through online, television, radio, and print advertisements specifically markets its cruises as the world's largest upper premium cruise line providing the highest quality cruise product for mature and discerning travelers.

11.      As part of providing vacation cruises, OCEANIA must provide its passengers with competent medical care and facilities, as well as staff capable of making sound medical and evacuation decisions.

12.      As part of providing vacation cruises, OCEANIA advertised that its ships' onboard medical centers were staffed by physicians which meet American College of Emergency Physicians and ICCL (International Council of Cruise Lines) guidelines, including current physician licensure, three years of postgraduate clinical practice in general and emergency medicine or Board certification in emergency medicine, family practice or internal medicine or competent skill level in advance life support and cardiac care.

13.     OCEANIA charges money to passengers for medical services provided. OCEANIA provides medical services to passengers for profit and owes its passengers a duty to provide competent and non-negligent medical care and services.

14.     OCEANIA owned, operated, controlled, and/or maintained the medical center aboard the *Riviera*. OCEANIA maintained a medical operations division at its corporate headquarters in Miami, Florida. The onboard medical center and medical operations division work as a team in the event of a medical evacuation emergency. OCEANIA is aware that medical emergencies may arise on its vessels and is aware of the need to promptly evacuate passengers suffering from serious medical emergencies.

15.     At all times material, OCEANIA advertised that it has established contacts throughout the world with several emergency rooms/hospitals where onboard doctors can refer patients for medical care.

16.     OCEANIA, through its shoreside Fleet Medical Operations division, could control and monitor the treatment provided by the onboard medical staff via telephone, video conference, or otherwise.

17.     OCEANIA's officials and employees could track and participate in safety, security, and medical emergencies on board the vessel by communicating with the *Riviera's* crew via telephone, videoconference, Skype, and other means of communication.

18.     OCEANIA, through both the crew on board and their shoreside officials and employees, who acted in consultation with one another, failed to properly care for and promptly and properly evacuate Judith Pardini.

19.     Upon information and belief, the Master of the *Riviera* was consulted regarding Judith Pardini's condition and the emergent nature of the situation. The Master is an employee or

3

agent of OCEANIA and could divert or control the vessel or make the proper decision to afford one of its passengers the medical care and treatment she desperately needed.  The Master and the bridge team are also responsible for determining the logistics for medical evacuation or disembarkation, properly coordinating the evacuation of sick and injured individuals, and making sure OCEANIA's passengers are afforded the logistical support needed during a medical emergency. This responsibility is carried out with OCEANIA's shore-based fleet operations and shoreside individuals from OCEANIA that coordinate voyage logistics.

20.     OCEANIA was vicariously liable for the negligence of the medical staff and doctors on board the *Riviera*, who were employees, apparent agents, or actual agents, of OCEANIA.

21.     OCEANIA was vicariously liable for the negligence of the non-medical staff on board the *Riviera*, who were employees, apparent agents, or actual agents, of OCEANIA.

22.     OCEANIA controlled or had the right to control all people working in its medical departments, including the medical doctors and staff that improperly treated and negligently mismanaged Judith Pardini's condition.

23.     Judith and Ulisse Pardini relied upon OCEANIA's representations regarding its onboard medical facilities staffed with qualified and competent physicians in their decision to purchase the cruise vacation with OCEANIA.

24.     The cruise vacation included flights from Palm Springs, CA, to Miami, FL. The cruise was a transatlantic passage departing from Miami, FL on March 18, 2022, and arriving in Lisbon, Portugal on March 28, 2022. The ship had only one scheduled stop in Bermuda on March 21, 2022, before continuing to Portugal. Before setting sail, OCEANIA changed the itinerary to stop in the Bahamas on March 19, 2022, instead of Bermuda. This decision was made due to

inclement weather.

25.     On March 18, 2022, Judith and Ulisse Pardini arrived at the Port of Miami to board the Oceania *Riviera*.

26.     While in line waiting to board, Judith Pardini told OCEANIA representatives that she felt fatigued, dizzy, had swelling in her legs bilaterally, and was unable to walk. Several requests for help were made.

27.     An OCEANIA representative eventually brought her a wheelchair and assisted her and Ulisse Pardini through the boarding process. The OCEANIA representative then assisted them to their stateroom.

28.     While still docked in the Port of Miami, a bellman took Judith Pardini by wheelchair to the *Riviera* medical center to receive care and treatment from the ship's physician for complaints of double-vision and swelling in both legs. She was examined by Dr. Mark Alvin Chiong Tan, M.D.

29.     Dr. Tan was an employee or agent of OCEANIA and was at all times material acting within the course and scope of his employment or agency with OCEANIA.

30.     Judith Pardini complained of swelling and pain in both of her legs. The medical record states that shortly before her presentation in the medical center, she had been unable to put on her shoes due to the swelling. Judith Pardini also complained of double vision.

31.     Dr. Tan documented a review of systems that went into great detail about medical systems unrelated to her complaints, and which directly contradicts Judith Pardini's complaints and presentation. Dr. Tan deviated from the standard of care by not conducting an accurate and targeted review of systems of Judith Pardini. This deviation caused him to fail to appreciate the life-threatening nature of her condition and to formulate an appropriate plan of care.

32.     In his review of systems, Dr. Tan charted that Judith Pardini denied tiredness, ankle swelling, rashes, visual disturbances, painful leg with exercise, dizziness, and pains or stiffness. Out of fifty-six entries in the review of systems, only one was charted as present – bruising. Dr. Tan did not document her inability to walk or her arrival by wheelchair. Dr. Tan's documented review of systems cannot be reconciled with what others documented as her complaints or what Judith Pardini wrote herself.

33.     In contrast to his uncharacteristically detailed review of systems, Dr. Tan did not document anything about Judith Pardini's medical history, surgical history, social history, medication list, or allergies. This too caused Dr. Tan to formulate an inappropriate plan of care.

34.     Despite Judith Pardini's serious complaints of double-vision, a possible indication of a stroke, Dr. Tan did not examine her vision or conduct a neurological exam. It was a further deviation from the standard of care not to immediately refer her to a shoreside facility for a stroke workup.

35.     Dr. Tan also noted the absence of peripheral edema, only to document in the same section that she had pitting edema in her lower extremities. This finding, along with her age of 82, and the fact that her leg swelling began acutely after an over five-hour flight the night before, should have prompted Dr. Tan to suspect a possible deep vein thrombosis ("DVT"). He nevertheless charted: "No obvious signs of DVT." The standard of care required her immediate referral to a shoreside facility to rule out a possible DVT.

36.     Dr. Tan ordered blood tests, including a Biochemistry Panel Plus, METLAC 12 panel, and a CBC panel. These lab results were available and reviewed by Dr. Tan before the *Riviera* departed from the Port of Miami. Of the thirty-three individual tests performed in these three lab panels, fifteen were elevated above the normal range and nine were below the normal

range. The abnormal lab values, or dyscrasias, were consistent with acute kidney failure. These dyscrasias, particularly the documented "markedly elevated" c-reactive protein and blood urea nitrogen levels, should have prompted Dr. Tan to immediately transfer Judith Pardini off the *Riviera* for necessary treatment instead of clearing her for the transatlantic passage.

37.     Before departure from the Port of Miami, Dr. Tan diagnosed Judith Pardini with acute kidney failure – a fatal condition if not emergently treated. At all times material, the Riviera medical center did not have the appropriate equipment, staff, or other resources to treat this life-threatening condition. Dr. Tan further diagnosed Judith Pardini with cellulitis, an albumin abnormality, hyperkalemia, and hyperuricemia. Dr. Tan's plan of care included the administration of multiple IV medications, including IV antibiotics (ceftriaxone) to treat the presumed cellulitis, a diuretic (furosemide), and fluids.

38.     The planned IV therapies began during the March 18, 2022 visit and were to be completed in the *Riviera* medical center over several days. Still unable to walk, she was then discharged to her stateroom by wheelchair and with the IV line in her arm. She was given anti-embolism compression stockings and instructions to return to the medical center the following day for continued treatment.

39.     Dr. Tan did not appreciate the severity of Judith Pardini's medical condition on presentation to the medical center. Despite multiple reasons to do so, his failure to immediately refer her to a shoreside medical facility with appropriate resources deviated from the applicable standard of care.

40.     On the morning of March 19, 2022, the *Riviera* docked in Nassau, Bahamas. While in port, Judith Pardini returned to the medical center as directed. She received the multiple IV medications, IV antibiotics, and fluids according to Dr. Tan's plan of care. She was then

discharged to her stateroom with instructions to return the following day.

41.     Judith Pardini's condition continued to deteriorate, and she again returned to the medical center on the evening of March 19, 2022. Dr. Tan again examined her and noted the worsening of her acute kidney failure based on the results of her lab work. Dr. Tan ordered two additional IV antibiotics (vancomycin and ciprofloxacin), both inappropriate and further evidence of Dr. Tan's inability to appropriately treat her acute kidney failure.

42.     Vancomycin causes drug-induced nephrotoxicity when given in the doses given to Judith Pardini. It deviated from the standard of care to use this medication in a patient in acute kidney failure, particularly at a non-renal-adjusted dose. The other, ciprofloxacin, has an FDA Black Box warning not to use in patients over sixty years old nor is it the type of antibiotic used to treat cellulitis. Dr. Tan deviated from the standard of care by ordering these medications, the nursing staff by administering these medications, and OCEANIA for failing to have an adequate pharmacy monitoring system in place to ensure appropriate medication of passengers like Judith Pardini.

43.     On the evening of March 19, 2022, based on his misinterpretations of her lab values, Dr. Tan made the diagnoses of suspected DVT, suspected sepsis, and heart failure – all life-threatening conditions which required immediate medical evacuation.

44.     An ultrasound of the legs was not performed to confirm the DVT, apparently due to a lack of ultrasound equipment on board. Judith Pardini was again discharged to her stateroom with instructions to return the following day.

45.     Judith Pardini returned to the medical center on the morning of March 20, 2022. Dr. Tan, without confirmation of a DVT, started twice daily injections of 50 mg of enoxaparin (an anticoagulant) for a total dose of 100 mg per day. Dr. Tan deviated from the standard of care

by initiating anticoagulant therapy without confirmation of a DVT. He further deviated from the standard of care by giving Judith Pardini an excessive dose of enoxaparin, instead of the renal-adjusted dosage required for a patient in acute kidney failure. To this point, Judith Pardini had still not received the appropriate treatment for her acute kidney failure because the condition could not be treated on the *Riviera*.

46.     On March 20, 2022, Judith Pardini continued to receive the antibiotics ordered by Dr. Tan.

47.     Later on March 20, 2022, Judith Pardini's lab results showed a sharp worsening of her medical condition and specifically her kidney function.

48.     On March 21, 2022, Judith Pardini returned to the medical center for her continued medical treatment as directed by Dr. Tan. She received IV medications that morning. Her lab results showed a continued worsening of her condition.

49.     Despite her worsening condition, Dr. Tan discontinued all IV medications and prescribed her oral medications instead. Judith Pardini was discharged and instructed to remain in her stateroom under the observation of her husband. Dr. Tan advised she did not need further treatment in the medical center.

50.     On March 22, 2022, Judith Pardini's condition continued to worsen, to the point she could not get up from her stateroom bed with her husband's assistance. Crew members, including a nurse, came to the stateroom and transferred her to the medical center.

51.     Finally, at 1:15 p.m., on March 22, 2022, Dr. Tan remotely consulted with the Cleveland Clinic of Florida. Due to extent of the acute kidney failure, the physician at the Cleveland Clinic told Dr. Tan that Judith Pardini needed to be medically evacuated from the ship to a hospital.

52.     Following this consult with the Cleveland Clinic physician, Dr. Tan alerted the Captain and Staff Captain of the Riviera, and OCEANIA's Corporate Navigation and Medical Department of the need to immediately evacuate Judith Pardini from the ship.

53.     On March 23, 2022, while in the intensive care unit ("ICU") of the *Riviera* medical center, Judith Pardini became unresponsive. She was intubated and placed on a ventilator. She remained in the ICU until March 26, 2022.

54.     On March 26, 2022, the OCEANIA *Riviera* arrived near Portugal and Judith Pardini was evacuated by helicopter to a hospital in Funchal, Portugal. The Referral Ashore Form prepared by Dr. Tan for the Funchal physicians states that Judith Pardini needed the care of a nephrologist (kidney specialist) and a critical care physician. The Referral Ashore Form further states her condition as uremic encephalopathy (a serious brain condition caused by untreated acute kidney failure), "*secondary to* acute renal failure from severe sepsis and cellulitis of unknown organism."

55.     At 2:48 p.m. local time on March 26, 2022, the physicians at the Funchal hospital pronounced Judith Pardini dead.

56.     Ulisse Pardini was not allowed to travel with his wife in the helicopter and had to stay onboard the *Riviera* until the ship arrived in Lisbon, Portugal on March 28, 2022. Once the ship docked in Lisbon, Ulisse Pardini was detained by *Riviera* crew members who would not let him disembark until he signed a Promissory Note for the onboard medical treatment charges. He was ultimately allowed to disembark despite refusing to sign the Promissory Note.

57.     Despite Judith Pardini's dire condition which required urgent disembarkation to a higher level of care, and knowing that an air evacuation with a helicopter, rendezvous with a rescue vessel, or expeditious diversion of the vessel to a point of disembarkation was

operationally feasible, OCEANIA failed to analyze or inquire as to possible disembarkation options to assist Judith Pardini. Instead, the decisions were made to keep her on the vessel for an excessive and medically unacceptable period of time.

58.     OCEANIA's decisions not to divert course were made to avoid operational disruption to the great detriment of their passenger, Judith Pardini.

59.     The failure to properly evaluate Judith Pardini and immediately disembark her to a proper level of care, and the corresponding delays caused by OCEANIA, prevented her from being emergently evacuated from the *Riviera* and evaluated by specialists trained to treat such patients.

60.     The delays caused by OCEANIA's negligence caused Judith Pardini to suffer devastating injuries, and directly and proximately caused her death.

61.     All conditions precedent to the commencement of this action have been performed, waived, or otherwise satisfied.

## COUNT I – NEGLIGENCE

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 61.

62.     Because of OCEANIA's experience and familiarity with the demographics of the passengers on its cruises, and the illnesses and emergencies experienced by past cruise passengers, it was reasonably foreseeable to OCEANIA that the *Riviera* would have passengers similar in age to Judith Pardini, and passengers with common illnesses and emergencies such as her condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation, treatment, and evacuation.

63.     OCEANIA owed the duty of exercising reasonable care under the circumstances. Judith Pardini was diagnosed with acute kidney failure on board the *Riviera* upon arrival to the

ship's medical center, and OCEANIA owed Judith Pardini the duty of protecting her from injury relating to her emergent condition and to exercise reasonable care to provide such aid and assistance as ordinarily prudent people would render under similar circumstances, which included immediate transfer to a shoreside hospital.

64.    OCEANIA breached its duty of protecting Judith Pardini from injury relating to her emergent condition, and of exercising reasonable care to provide such aid and assistance as ordinarily prudent people would render under similar circumstances. OCEANIA breached its duty in one or more of these ways:

   a.   OCEANIA failed to transfer her off the ship upon diagnosis of her serious medical condition while still docked in the Port of Miami;

   b.   OCEANIA failed to timely evacuate Judith Pardini from the ship so she could promptly receive treatment;

   c.   OCEANIA failed to timely divert the ship so Judith Pardini could promptly receive treatment;

65.    OCEANIA knew or reasonably should have known about these conditions and failures, but did not correct them before the incident that caused Judith Pardini's death. These conditions and failures were longstanding and obvious to OCEANIA. OCEANIA is aware that its passengers may suffer from life-threatening conditions, and are aware of the urgent need to evacuate such patients to competent medical centers capable of providing treatment.

66.    As a direct and proximate result of OCEANIA breaching its duty to Judith Pardini, she suffered greatly and died. Had Judith Pardini received appropriate care and treatment onboard or been timely evacuated from the ship, she would not have suffered such devastating injuries causing her death.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against OCEANIA for all damages recoverable under the law.

**COUNT II – NEGLIGENCE OF NON-MEDICAL PERSONNEL**
**(Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)**

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 61.

67.     Because of OCEANIA's experience and familiarity with the demographics of the passengers on its cruises, and the illnesses and emergencies experienced by past cruise passengers, it was reasonably foreseeable to OCEANIA that the *Riviera* would have passengers similar in age to Judith Pardini, and passengers with common illnesses and emergencies such as her condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation, treatment, and evacuation.

68.     OCEANIA owed the duty of exercising reasonable care under the circumstances. Judith Pardini was diagnosed with acute kidney failure on board the *Riviera* upon arrival to the ship's medical center, and OCEANIA owed Judith Pardini the duty of protecting her from injury relating to her emergent condition and to exercise reasonable care to provide such aid and assistance as ordinarily prudent people would render under similar circumstances, which included immediate transfer to a shoreside hospital.

69.     OCEANIA breached its duty of protecting Judith Pardini from injury relating to her emergent condition, and of exercising reasonable care to provide such aid and assistance as ordinarily prudent people would render under similar circumstances. OCEANIA breached its duty in one or more of these ways:

a.      OCEANIA failed to properly treat Judith Pardini;

b.      OCEANIA negligently misdiagnosed and anchored on the wrong diagnosis;

c.      OCEANIA failed to perform or arrange for appropriate diagnostics testing given Judith Pardini's condition;

d.      OCEANIA failed to obtain consultations with appropriate specialists;

e.      OCEANIA failed to properly monitor Judith Pardini;

f.      OCEANIA failed to transfer her off the ship upon diagnosis of her serious medical condition while still docked in the Port of Miami;

g.      OCEANIA failed to timely evacuate Judith Pardini from the ship so she could promptly receive treatment;

h.      OCEANIA failed to timely divert the ship so Judith Pardini could promptly receive treatment;

i.      OCEANIA did not properly or timely consult qualified shore-based staff regarding Judith Pardini's condition;

j.      OCEANIA failed to obtain a proper medical opinion on Judith Pardini's condition;

k.      OCEANIA failed to timely use "Telemedicine" and other resources on the vessel to properly assess Judith Pardini's condition;

l.      OCEANIA failed to develop and institute adequate procedures and policies to address Judith Pardini's medical situation;

m.      OCEANIA failed to have in place a system to monitor and supervise situations where the on-board medical personnel diagnose serious medical conditions and provide repeated treatment for said serious medical conditions;

n.      OCEANIA failed to have in place a system to ensure medications administered to its patients are appropriate, appropriately dosed, and not contraindicated by a patient's underlying medical condition;

o.      OCEANIA's nurses and healthcare support staff failed to advocate for Judith Pardini in the face of a negligent diagnosis and treatment plan by Dr. Tan;

p.      OCEANIA's nurses negligently administered medications to Judith Pardini which were contraindicated with her kidney failure;

q.      OCEANIA's nurses negligently administered medications that had been negligently prescribed in dosage amounts far more than the appropriate dose for Judith Pardini;

r.      OCEANIA did not appreciate the severity of Judith Pardini's condition upon her initial presentation and thereafter as her condition worsened;

s.      OCEANIA failed to perform any procedure to Judith Pardini's medical

benefit; and/or

t.      OCEANIA deviated from the standard of care for treating patients in Judith Pardini's condition.

70.      OCEANIA knew or reasonably should have known about these conditions and failures, but did not correct them before the incident that caused Judith Pardini's death. These conditions and failures were longstanding and obvious to OCEANIA. OCEANIA is aware that its passengers may suffer from life-threatening conditions, and are aware of the urgent need to evacuate such patients to competent medical centers capable of providing treatment.

71.      As a direct and proximate result of OCEANIA breaching its duty to Judith Pardini, she suffered greatly and died. Had Judith Pardini received appropriate care and treatment on board or been timely evacuated from the ship, she would not have suffered such devastating injuries which caused her death.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against OCEANIA for all damages recoverable under the law.

## COUNT III – NEGLIGENCE OF MEDICAL PERSONNEL
### (Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 61.

72.      OCEANIA's medical personnel, including the doctors and nurses on board the *Riviera*, were the employees, agents, servants, and/or persons otherwise allowed to act on behalf of OCEANIA. Thus, OCEANIA is vicariously liable for the acts and/or omissions of its medical personnel.

73.      OCEANIA acknowledged that its medical personnel, including the doctors and nurses onboard the *Riviera*, would act for it, and the medical personnel manifested an acceptance of the undertaking. For example: (1) OCEANIA directly paid the medical personnel for their

work in the medical center onboard the *Riviera*; (2) the medical center on board the *Riviera* was created, owned, and operated by OCEANIA; (3) the medical personnel on board the *Riviera* worked at what OCEANIA describes in its advertising as OCEANIA's medical center; and (4) OCEANIA knowingly provided, and the medical personnel on board the *Riviera* knowingly wore, uniforms bearing OCEANIA's name and logo; the ship physician on the *Riviera* is considered and titled an officer of OCEANIA's cruise line.

74.     OCEANIA's medical personnel, including the doctors and nurses on board the *Riviera*, were subject to the right of control by OCEANIA and were acting within the scope of their employment or agency. For example: (1) the medical personnel were employed by OCEANIA; (2) the medical personnel were hired to work in a medical center on board the *Riviera* which was created, owned and operated by OCEANIA; (3) the medical personnel were paid salaries and/or other employment related benefits directly by OCEANIA; (4) the medical personnel on board the *Riviera* were considered members of the ship's crew; (5) the medical personnel had to wear uniforms or other insignia provided by OCEANIA; (6) OCEANIA put the medical personnel on board the *Riviera* under the command of the ship's superior officers, and they were subject to the ship's discipline and the master's orders; (7) OCEANIA had the right to fire its medical personnel; (8) OCEANIA directly billed the Plaintiff and other passengers onboard the *Riviera* for services rendered by its medical personnel and/or use of the onboard medical center, medical equipment and medical supplies; and (9) the medical personnel on board the *Riviera* were subject to the control of OCEANIA's shore-side medical department.

75.     OCEANIA, through its medical personnel, owed Judith Pardini the duty of exercising reasonable care under the circumstances. In particular, as Judith Pardini was diagnosed with a serious medical condition upon arrival to the ship's medical center, OCEANIA owed

Judith Pardini the duty of protecting her from injury relating to her emergent condition, and of exercising reasonable care to provide such aid and assistance as ordinarily prudent people would render under similar circumstances.

76.     OCEANIA, through its medical personnel, breached its duty of protecting Judith Pardini from injury relating to her emergent condition, and of exercising reasonable care to provide such aid and assistance as ordinarily prudent people would render under similar circumstances. OCEANIA, through its medical personnel, breached its duty in one or more of these ways:

a.     OCEANIA failed to properly treat Judith Pardini;

b.     OCEANIA negligently misdiagnosed and anchored on the wrong diagnosis;

c.     OCEANIA failed to perform or arrange for appropriate diagnostics testing given Judith Pardini's condition;

d.     OCEANIA failed to obtain consultations with appropriate specialists;

e.     OCEANIA failed to properly monitor Judith Pardini;

f.     OCEANIA failed to transfer her off the ship upon diagnosis of her serious medical condition while still docked in the Port of Miami;

g.     OCEANIA failed to timely evacuate Judith Pardini from the ship so she could promptly receive treatment;

h.     OCEANIA failed to timely divert the ship so Judith Pardini could promptly receive treatment;

i.     OCEANIA did not properly or timely consult qualified shore-based staff regarding Judith Pardini's condition;

j.     OCEANIA failed to obtain a proper medical opinion on Judith Pardini's condition;

k.     OCEANIA failed to timely use "Telemedicine" and other resources on the vessel to properly assess Judith Pardini's condition;

l.     OCEANIA failed to develop and institute adequate procedures and policies to address Judith Pardini's medical situation;

m.     OCEANIA failed to have in place a system to monitor and supervise

situations where the on-board medical personnel diagnose serious medical conditions and provide repeated treatment for said serious medical conditions;

n.   OCEANIA failed to have in place a system to ensure medications administered to its patients are appropriate, appropriately dosed, and not contraindicated by a patient's underlying medical condition;

o.   OCEANIA's nurses and healthcare support staff failed to advocate for Judith Pardini in the face of a negligent diagnoses and treatment plan by Dr. Tan;

p.   OCEANIA's nurses negligently administered medications to Judith Pardini which were contraindicated with her kidney failure;

q.   OCEANIA's nurses negligently administered medications that had been negligently prescribed in dosage amounts far more than the appropriate dose for Judith Pardini;

r.   OCEANIA did not appreciate the severity of Judith Pardini's condition upon her initial presentation and thereafter as her condition worsened;

s.   OCEANIA failed to perform any procedure to Judith Pardini's medical benefit; and/or

t.   OCEANIA deviated from the standard of care for treating patients in Judith Pardini's condition.

77.   OCEANIA, through its medical personnel, knew or reasonably should have known about these conditions and failures, but did not correct them before the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to OCEANIA.

78.   As a direct and proximate result of OCEANIA breaching its duty to Judith Pardini, she suffered greatly and died. Had Judith Pardini received appropriate care and treatment on board or been timely evacuated from the ship, she would not have suffered and died.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against OCEANIA for all damages recoverable under law.

## COUNT IV – NEGLIGENCE OF MEDICAL PERSONNEL
### (Vicarious Liability Based Upon Apparent Agency)

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 61.

79.     OCEANIA's medical personnel, including the doctors and nurses on board the Riviera, were the apparent employees, agents, servants, and/or people otherwise allowed to act on behalf of OCEANIA. Thus, OCEANIA is vicariously liable for the acts and/or omissions of its medical personnel.

80.     OCEANIA made representations to Plaintiff and other passengers onboard the *Riviera* that the ship's medical personnel were the employees, agents, servants, and/or persons otherwise allowed to act for OCEANIA's benefit. For example: (1) OCEANIA promoted the medical personnel on board the *Riviera* and represented them as being OCEANIA employees through brochures, internet advertising, and/or signs, documents, and uniforms on the ship; (2) OCEANIA promoted the medical center on board the *Riviera* and described it in proprietary language; (3) the medical personnel on board the *Riviera* worked in the medical center that OCEANIA promoted and described in proprietary language; (4) OCEANIA directly bills the Plaintiff and other passengers onboard the *Riviera* for services rendered by the onboard medical personnel and/or use of the onboard medical center, medical equipment, and medical supplies; (5) the medical personnel on board the *Riviera* had to wear uniforms or other insignia provided by OCEANIA; (6) OCEANIA held out the medical personnel on board the *Riviera* as members of the ship's crew; and (7) the medical personnel on board the *Riviera* spoke and acted as though they were employed by OCEANIA. OCEANIA knew of such representations but took no action to indicate otherwise.

81.     OCEANIA's representations to Plaintiff and other passengers onboard the

*Riviera* caused them to reasonably believe that the ship's medical personnel were the employees, agents, servants, and/or persons otherwise allowed to act for OCEANIA's benefit.

82.     OCEANIA's representations to Plaintiff and other passengers onboard the *Riviera* induced their detrimental, justifiable reliance upon the appearance of agency. For example, Judith Pardini justifiably relied upon OCEANIA's representations in purchasing a cruise on the *Riviera*.  She also justifiably relied upon the decision of OCEANIA's medical personnel that she remain aboard the vessel rather than seek medical care in Miami.

83.     OCEANIA, through its medical personnel, owed Judith Pardini the duty of exercising reasonable care under the circumstances. As Judith Pardini was diagnosed with a serious medical condition upon arrival to the ship's medical center, OCEANIA owed Judith Pardini the duty of protecting her from injury relating to her emergent condition, and of exercising reasonable care to provide such aid and assistance as ordinarily prudent persons would render under similar circumstances.

84.     OCEANIA, through its medical personnel, breached its duty of protecting Plaintiff from injury relating to his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. OCEANIA, through its medical personnel, breached its duty in one or more of these ways:

a.     OCEANIA failed to properly treat Judith Pardini;

b.     OCEANIA negligently misdiagnosed and anchored on the wrong diagnosis;

c.     OCEANIA failed to perform or arrange for appropriate diagnostics testing given Judith Pardini's condition;

d.     OCEANIA failed to obtain consultations with appropriate specialists;

e.     OCEANIA failed to properly monitor Judith Pardini;

f.     OCEANIA failed to transfer her off the ship upon diagnosis of her serious medical condition while still docked in the Port of Miami;

g.     OCEANIA failed to timely evacuate Judith Pardini from the ship so she could promptly receive treatment;

h.     OCEANIA failed to timely divert the ship so Judith Pardini could promptly receive treatment;

i.     OCEANIA did not properly or timely consult qualified shore-based staff regarding Judith Pardini's condition;

j.     OCEANIA failed to obtain a proper medical opinion on Judith Pardini's condition;

k.     OCEANIA failed to timely use "Telemedicine" and other resources on the vessel to properly assess Judith Pardini's condition;

l.     OCEANIA failed to develop and institute adequate procedures and policies to address Judith Pardini's medical situation;

m.     OCEANIA failed to have in place a system to monitor and supervise situations where the on-board medical personnel diagnose serious medical conditions and provide repeated treatment for said serious medical conditions;

n.     OCEANIA failed to have in place a system to ensure medications administered to its patients are appropriate, appropriately dosed, and not contraindicated by a patient's underlying medical condition;

o.     OCEANIA's nurses and healthcare support staff failed to advocate for Judith Pardini in the face of a negligent diagnoses and treatment plan by Dr. Tan;

p.     OCEANIA's nurses negligently administered medications to Judith Pardini which were contraindicated with her kidney failure;

q.     OCEANIA's nurses negligently administered medications that had been negligently prescribed in dosage amounts far more than the appropriate dose for Judith Pardini;

r.     OCEANIA did not appreciate the severity of Judith Pardini's condition upon her initial presentation and thereafter as her condition worsened;

s.     OCEANIA failed to perform any procedure to Judith Pardini's medical benefit; and/or

t.     OCEANIA deviated from the standard of care for treating patients in Judith Pardini's condition.

85.     OCEANIA, through its medical personnel, knew or reasonably should have known about these conditions and failures, but did not correct them before the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to OCEANIA.

86.     As a direct and proximate result of OCEANIA breaching its duty to Judith Pardini, she suffered greatly and died. Had Judith Pardini received appropriate care and treatment onboard and been timely evacuated from the ship, she would not have suffered such devastating injuries and died.

## COUNT V – NEGLIGENT HIRING / RETENTION

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 61.

87.     Because of OCEANIA's experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses experienced by past cruise passengers, it was reasonably foreseeable to OCEANIA *Riviera* would have passengers similar in age to the Judith Pardini, and passengers with common illnesses such as the Judith Pardini's condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation, and treatment.

88.     OCEANIA owed Judith Pardini the duty of exercising reasonable care to use competent and fit medical personnel, including competent and fit doctors and nurses on board the *Riviera*. However, Oceania's doctor, Dr. Mark Alvin Chiong Tan, M.D., was incompetent and unfit to perform the requisite examination, evaluation, and treatment for passengers like Judith Pardini, and OCEANIA knew or reasonably should have known that he was incompetent

and unfit to do so.

89.     OCEANIA breached its duty by hiring an incompetent and unfit physician. For example, OCEANIA did not conduct a proper background investigation to determine if Dr. Tan was qualified by training and/or experience and if he could conduct a proper examination and/or evaluation for treatment or referral for treatment to a shoreside facility. A proper investigation by OCEANIA would have revealed the incompetence or unfitness of Dr. Tan to examine, evaluate, treat or refer to an appropriate shoreside facility or physician to treat conditions such as those Judith Pardini suffered from. It was unreasonable for OCEANIA to hire and retain Dr. Tan, given the information it knew or should have known.

90.     As a direct and proximate result of OCEANIA's negligent retention and hiring of Dr. Tan, OCEANIA let Dr. Tan provide negligent care to Judith Pardini which caused her death.

## **DAMAGES**

Plaintiff hereby incorporates and realleges paragraphs one (1) through ninety (90) as though fully set forth herein and further alleges:

91.     Plaintiff ANTON PARDINI, as Personal Representative of the Estate of JUDITH PARDINI, is entitled to and seeks recovery of the following damages from the Defendants including for the wrongful death of JUDITH PARDINI under maritime law and/or Florida Statute §768.20-21, in that her death was due to negligence which occurred in Florida's territorial waters:

        a.  On behalf of ULISSE PARDINI, individually as JUDITH PARDINI's surviving spouse, the value of lost support and services, companionship and protection, and mental pain and suffering from the date of her death. These

*Estate of Judith Pardini v. OCEANIA*
*Complaint and Demand for Jury Trial*

losses are either permanent or continuing in nature and ULISSE PARDINI has

suffered these losses in the past and will suffer these losses in the future.

92.     Plaintiff's injuries and related damages as outlined in paragraph eighty-six (86)

were a direct and proximate result of the negligence and conduct of Defendant.

WHEREFORE, Plaintiff, ANTON PARDINI, demands judgment against Defendant for

compensatory damages, interest, and costs associated with the bringing of this action.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims set forth herein.

Dated: December 1, 2022.                         Respectfully submitted,

By: *s/ Andrew Rodriguez*
**Manuel A. Reboso** (FBN 390844)
reboso@rbrlaw.com
**Andrew Rodriguez** (FBN 99629)
rodriguez@rbrlaw.com
rachel@rbrlaw.com
ROSSMAN, BAUMBERGER, REBOSO,
& SPIER, P.A.
9155 S. Dadeland Blvd., Suite 1200
Miami, FL  33156
Telephone:     (305) 373-0708
Facsimile:     (305) 577-4370

*and*

**Philip D. Parrish** (FBN 541877)
phil@parrishappeals.com
betty@parrishappeals.com
PHILIP D. PARRISH, P.A.
7301 SW 57th Court, Suite 430
Miami, FL 33143
Telephone:     (305) 670-5550
Facsimile:     (305) 670-5552

*Attorneys for the Plaintiff*

24